HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TERESA FOX and EDWARD ISKRA,

    Plaintiffs,

v.

KITSAP COUNTY, a municipal corporation of the State of Washington; KEITH BARKOW; DERRICK CRAWLEY; CYNTHIA BAKER; and SCOTT P. RIDDELL,

    Defendants.

Case No. C06-5698RBL

ORDER

THIS MATTER comes on before the above-entitled Court upon the Individual Defendants' Motion for Partial[1] Summary Judgment on Plaintiff Fox's Claims [Dkt. #87], the Individual Defendants' Motion for Summary Judgment on Plaintiff Iskra's Claims [Dkt. #94], and Kitsap County's Motion for Summary Judgment Against Plaintiffs Fox and Iskra [Dkt. #97]. The Court has reviewed the defendants' motions, memoranda in support and declarations, the plaintiffs' memoranda and declarations in opposition to the motions, and the defendants' reply memoranda, together with the entirety of the records and files herein.[2] For the reasons stated, the Court **GRANTS IN PART and DENIES IN PART** defendants' motions.

## I. FACTS

---

[1] The individual defendants' actually seek summary judgment on all of plaintiff Fox's claims.

[2] As will be more thoroughly discussed later in this Order, this Court did not "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (internal citation omitted).

ORDER
Page - 1

A.  **Organizational Structure.**

The Kitsap County Fire Marshal's Office ("KCFMO") is responsible for conducting fire inspections, plan review, fire investigations, fire prevention education, and fire safety community awareness. KCFMO is a division of the Kitsap County Department of Community Development, which is one of the departments that reports to the Board of County Commissioners. During 2005, Cris Gears was the County Administrator, Cindy Baker was the Director of Community Development, and Derrick Crawley was the Fire Marshal.[3] Mr. Crawley reported to Ms. Baker, and plaintiffs Teresa Fox and Edward Iskra reported to Mr. Crawley.

B.  **Plaintiff Teresa Fox.**

Ms. Fox began her employment with Kitsap County in 1994 and eventually transferred to the KCFMO in 2000. [Declaration of Teresa Fox, p. 1, Dkt. #110 ("Fox Decl."); Deposition of Teresa Fox, Vol. I, pp. 7-8, attached to Plaintiffs Response to Individual Defendants Motions for Summary Judgment, Dkt. #108 ("Fox Dep.")]. Her job at the KCFMO was originally as an administrative assistant. The job was later re-classified to program specialist. [Fox Dep., p. 8]. According to Ms. Fox her duties at the KCFMO changed dramatically over time. When she began as an administrative assistant her job entailed assisting the fire marshal with computerizing his records and developing policies and procedures for the division. She then began reviewing permits, coordinating the permit process, and doing database programming and database management. When she resigned her position, she was doing plan review, developing the fire code permit program, and conducting inspections in the field. [Fox Dep., pp. 12-13]. She described her position as a fire inspector trainee. [*Id.*].

In August, 2004 Ms. Fox applied for a position as a Deputy Fire Marshal I in the KCFMO. [Fox Decl., p. 1; Declaration of Penny Starkey, Exh. A, Dkt. #98 ("Starkey Decl.")]. She was interviewed but was not hired. Keith Barkow was hired for the position and began his employment with the County on December 6, 2004. [Starkey Decl., para. 6, Exh. D].

During the first week of Mr. Barkow's employment, Ms. Fox alleges that he was "rude" to her as

---

[3]Plaintiffs' First Amended Complaint mistakenly names Keith Barkow as the Fire Marshal and indicates that Derrick Crawley was an "employee" of the KCFMO. [Dkt. #17]. Plaintiff Fox mistakenly declares that Crawley was Chief Deputy Fire Marshal during her employment [Fox Decl., p. 1], and the error is repeated in the Memorandum in Response to Kitsap County's Motion for Summary Judgment [Dkt. #108, p. 1].

Ms. Fox was training Mr. Barkow on how to use the Firehouse Records Management System. [Fox Dep., p. 43]. Ms. Fox indicates that on another occasion when Mr. Barkow was asking her and possibly another KCFMO employee to order supplies, he "was practically yelling at us[] . . . he was very, very loud, and to me that's rude and unprofessional when you're like, in somebody's face and you're very loud." [Fox Dep., p. 48]. She also indicates that Mr. Barkow informed her early on in their working relationship that she should leave her job. [Fox Dep., p. 55] Ms. Fox came to believe that Mr. Barkow did not have the qualifications that Derrick Crawley (the Fire Marshal) said he had and that were used to justify the decision to hire Mr. Barkow instead of Ms. Fox. [Fox Dep., pp. 49-53]. She declares that an investigation of the KCFMO commissioned by the County "determined that Mr. Barkow had lied about his qualifications both on his application for his position and at a County Commissioner's meeting." [Fox Decl., p. 3].[4]

In mid-December 2004, Ms. Fox requested that she be allowed to attend the Northwest Fire Conference training in Ocean Shores, Washington. [Starkey Decl., para. 7; Exh. H (Ms. Fox's purported charge of discrimination filed with the EEOC)]. Mr. Crawley did not act on the request.

In early February, 2005 Ms. Fox filed two grievances alleging that Mr. Barkow was engaging in intimidation, harassment, and violent behavior in the workplace and that Mr. Crawley failed to act on her training request.[5] Ms. Baker initially denied the grievances and, upon review, Mr. Gears affirmed the denial.

---

[4] In support of this statement the Fox Declaration states "See Diamond Report" with no citation to page numbers. Plaintiff's counsel document dumped a 189-page report and evidently expects this Court to read the whole report and glean from it support for plaintiff's statement. It is not the role of this Court "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.,* 55 F.3d 247, 251 (7th Cir. 1995)).

The Courts review of the Diamond Report on this point found only a reference that Mr. Barkow does not have ICC certification, but has the equivalent FCA certification. [Report of Deborah Diamond, attached to Plaintiffs' Response to the Individual Defendants' Motion for Summary Judgment, Dkt. #108, p. 64].

This Finding made by the investigator does not support the statement made in Ms. Fox's Declaration and statements to the same effect throughout her deposition.

[5] Plaintiff does not include the grievances in her responsive papers. In their moving papers, the County provided the rulings on the grievances. See Starkey Decl., Exhs. E and F. The rulings do not mention "sexual harassment".

ORDER
Page - 3

Ms. Fox purportedly repeatedly complained to Mr. Crawley and Ms. Baker, and to a lesser extent Mr. Gears and the Board of County Commissioners, about "fraud, waste, and abuse of the tax-payer's money" occurring at the KCFMO. [Fox Decl., pp. 2-3; Fox Dep., pp. 201-224]. The alleged fraud, abuse, and waste involved the violations of county policies by others in the KCFMO including defendants Crawley, Barkow and Riddell, and Deputy Fire Marshal John Gibson (not named as a defendant). These employees improperly used County vehicles, showed up late for work and left early, abused overtime, failed to perform required inspections, and failed to perform inspections competently. [*Id.*]. Ms. Fox also alleged that Mr. Crawley had poor management skills, failed to properly manage the KCFMO, and did not possess current fire inspector and fire investigator certifications required for the position of Fire Marshal. [*Id.*]. She further alleged that Mr. Crawley enforced the annual leave call-in policy differently as between her and others in the office.

From plaintiff Fox's briefing, declaration, and deposition testimony it is difficult to discern exactly when these complaints were made. Apparently, however, they were communicated to Mr. Crawley and Ms. Baker in emails and in face-to-face discussions prior to June 2, 2005. Some of her complaints were made known to Ms. Baker and Mr. Gears as part of the grievance procedure in the first half of 2005. Her allegations were also part of her letter of resignation and were discussed in her exit interview in December, 2005.[6]

On June 2, 2005 Ms. Baker called a staff meeting for the employees of the KCFMO. At the meeting, discussion was had about employees (presumably Ms. Fox and Mr. Iskra) complaining about other employees. Ms. Fox interpreted the remarks of Ms. Baker to mean that she should "sit down and shut up." [Fox Dep., p. 83]. She believed as a result of that meeting she would be reprimanded if she continued to complain. [*Id.*].

Between September, 2005 and December, 2005 Ms. Fox alleges she and another female employee were subjected to sexual harassment while employed at the KCFMO. There were several incidences of unwelcome, offensive comments. On September 19, 2005, Mr. Barkow made a comment about a female who worked at Woody's Hotdog Stand. He said that he went out and did an inspection "and he didn't

---

[6]At trial, plaintiff will be required to present specific evidence detailing how and when such complaints were communicated to the defendants.

ORDER
Page - 4

even have to sleep with her." [Fox Dep., p. 173]. On October 18, 2005 Mr. Barkow was standing in the doorway to Mr. Crawley's office and "they said something and what I heard was Brazilian bikini wax, butt lift, and breast implants. They were talking something about a woman or women." [Fox Dep., p. 109]. On November 2, 2005, Mr. Barkow called KCFMO employee Barbara Williams "honey" and "baby". [Fox Dep., p. 173]. Mr. Barkow would also call Ms. Fox and Ms. Williams "girls" and would call people "honey" and "babe" on the phone. [Fox Dep., p. 109]. In October or November, 2005, Mr. Barkow, "said something to me about I had a twinkle in my eye and he was all in my face . . . then when I was leaving he said something about my ass in front of other people." [Fox Dep., p. 113]. And, lastly, Mr. Barkow said that "if we had a normal secretary, you know, referring to me and my position as like I should be a normal secretary. I found that to be demeaning and gender-based." [Fox Dep., p. 110].

On December 5, 2005 Ms. Fox attended the regular Monday team meeting. At the meeting Mr. Crawley and Mr. Barkow became very hostile towards her. They were loud and yelling after she asked a question about Mr. Barkow's report. She indicates that "Derrick was probably coming across the table at me, you know he was leaning towards me. I remember he was so pissed off his neck vein was bulging out and, you know, I had seen this before with him." [Fox Dep., pp. 91-93]. Ms. Fox resigned the next day, December 6, 2005.

After Ms. Fox left the KCFMO, she obtained a restraining order against Scott Riddell based on a series of hang up phone calls beginning in the fall or winter of 2006 and continuing into 2007. [Fox Dep., pp. 137-139].

**C.  Plaintiff Edward Iskra.**

Mr. Iskra was hired as a Deputy Fire Marshal with the KCFMO in August, 1992. [Declaration of Edward Iskra, p. 1, Dkt. #109 ("Iskra Decl.")]. Prior to the incidents giving rise to this lawsuit, he was promoted to Deputy Fire Marshal II. As a Deputy Fire Marshal II, Mr. Iskra had the additional duty of conducting fire investigations together with all the responsibilities of a Fire Marshal I. Like Ms. Fox, Mr. Iskra complained to Derrick Crawley and Cynthia Baker about the fraud, abuse, and waste occurring in the KCFMO. [Iskra Decl., p. 1-3]. He made basically the same complaints Ms. Fox did. [*Id.*]. He attended the June 2, 2005 meeting with Ms. Baker and came away from it much as did Ms. Fox. He believed that if he continued to complain, that he would be reprimanded. [Iskra Decl., p. 2].

Sometime after Mr. Iskra started complaining to Mr. Crawley and Ms. Baker, Mr. Crawley ceased talking to him. When Mr. Crawley had to speak with Mr. Iskra, presumably on work-related topics, he did so "in a very stern, boisterous tone that raised the hair on the back of my neck and put me on the defense right away." [Deposition of Edward Iskra, p. 63, attached to Plaintiffs' Response to Individual Defendants' Motions for Summary Judgment, Dkt. #108 ("Iskra Dep.")]. Mr. Crawley began checking over Mr. Iskra's work; something that had not occurred prior to the complaints. [*Id.*]. Mr. Crawley also stopped using Mr. Iskra as the lead when Crawley was out of the office and stopped replying to Mr. Iskra's emails. [*Id.*]. After plaintiffs' complaints began, Mr. Crawley reacted by "siding with" an employee of lesser experience, presumably Mr. Barkow. [Iskra Dep., pp. 63-64, 93]. During the fall of 2005 while Mr. Iskra was on sick leave due to shoulder surgery, Mr. Crawley "talked bad about me" to Ms. Fox. [Iskra Dep., p. 64]. Crawley purportedly told Ms. Fox that Mr. Iskra failed to coordinate with the Kitsap County Sheriff's Office the return of a juvenile suspect from Montana. According to Mr. Iskra, the job of picking up a suspect from out of state was not his job but was the job of the prosecutor's office and the sheriff's office. [*Id.*].

There were several other incidents. At a meeting on June 9, 2005, Mr. Crawley directed Mr. Iskra to send an email to the chiefs of various fire districts and others apologizing for a previous email Mr. Iskra had sent and which Mr. Crawley felt was inappropriate. Mr. Iskra initially refused to send the email. Mr. Crawley "slapped" a written copy of an oral reprimand on Mr. Iskra's desk and again told Mr. Iskra to send the email. Mr. Iskra later sent the email but did not allow Mr. Crawley to review it prior to it being sent. Mr. Crawley again "slapped that reprimand down on my desk and stuck it in my file." [Iskra Dep., pp. 64-65; Declaration of Amanda G. Butler, Exh. F, Dkt. #95 ("Butler Decl.")]. Furthermore, Mr. Crawley "snapped at me" when asking if Mr. Iskra had sent a copy to the property owner of an enforcement letter to the owners of Henry Hardware, in Kingston. [Iskra Dep., p. 65]. Finally, there were three incidences when Mr. Crawley and Mr. Iskra got in heated arguments where Mr. Crawley "got right up in my face," [Iskra Dep., pp. 66-68].

On October 21, 2005, Mr. Iskra resigned his position with the County. [Butler Decl., Exh. A]. On December 6, 2005 he filed a whistle-blower complaint with the Kitsap County Board of Commissioners. [Attached as Exhibit 08-009 to Diamond Report, Dkt. #108]. As a result of that complaint, the County

retained Deborah Diamond to do an investigation into the fraud, waste, and abuse in the KCFMO. The results of Ms. Diamond's investigation substantiated some, but not all, of Mr. Iskra's and Ms. Fox's complaints.

None of the named defendants are currently employed by Kitsap County.

## II. PLAINTIFFS' COMPLAINT

Based upon the above stated facts, plaintiffs filed suit in this Court on December 6, 2006. In their First Amended Complaint filed May 23, 2007 [Dkt. #17], plaintiffs have brought claims under 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, and state common law.

Ms. Fox claims that her First and Fourteenth Amendment free speech rights were violated by all defendants retaliating against her for speaking out on matters of public concern. She claims that all the defendants violated Title VII by creating a hostile work environment, failing to train or promote her due to her gender, and by retaliating against her for filing a grievance over the discrimination she experienced due to her gender.[7] As to all defendants, Ms. Fox claims that she was "constructively discharged in contravention of public policy by retaliating against [her] for reporting fraud, waste and abuse by the management of the KCFMO." [Complaint, paras. 5, 6, Dkt. #17].[8] Ms. Fox claims that all defendants intentionally inflicted emotional distress upon her. And, finally, Ms. Fox claims that Defendant Scott Riddell harassed and retaliated against her for whistle-blowing and accessing the courts.

Mr. Iskra also claims[9] that his First and Fourteenth Amendment free speech rights were violated by all defendants retaliating against him for speaking out on matters of public concern. He also claims that he

---

[7]Because plaintiff did not provide the grievance, it is unclear whether she included sexual or gender based harassment in the grievance. See fn. 6. She does indicate, however, in her deposition that she included sexual harassment in the grievance. [Fox Dep., p. 125].

[8]Technically read, the complaint contains only a state common law claim of constructive discharge. *See, e.g., Bennett v. Hardy*, 113 Wn.2d 912 (1990). However, in plaintiffs' briefs in response to all three summary judgment motions, Ms. Fox argues that she was constructively discharged in violation of Title VII. In doing so, Ms. Fox cites to a constructive discharge case brought under 42 U.S.C. §1983 alleging violations of due process, *Huskey v. City of San Jose,* 204 F.3d 893 (9th Cir. 2000), notwithstanding the fact that there are many published cases discussing constructive discharge under Title VII.

The Court will consider the constructive discharge claim under all three theories: state common law, retaliation in violation of the First Amendment, and Title VII.

[9]The Court previously dismissed Mr. Iskra's claim of harassment and retaliation for whistle-blowing and accessing the court by Defendant Scott Riddell. [Dkt. #69].

was constructively discharged.[10]

Although the defendants moved for summary judgment on Mr. Iskra's claims under Title VII, the complaint raises no Title VII claim on behalf of Mr. Iskra nor does it contain any allegations which would support a claim under Title VII. The plaintiff has not moved to amend his Complaint to add a claim under Title VII. Mr. Iskra's Declaration makes no mention of any facts which would support a Title VII claim and plaintiff's briefing points to nothing in the record which would support such a claim. However, in Mr. Iskra's deposition he states that he complained to Mr. Crawley that Ms. Fox was being treated unfairly. Therefore, it appears he may be pursuing a claim that Mr. Iskra was retaliated against for supporting Ms. Fox in her discrimination grievances.

### III. DISCUSSION

**A.    Summary Judgment Standard.**

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

**B.    Kitsap County's Motion for Summary Judgment.**

Kitsap County moves for summary judgment on several grounds. They will be discussed in turn.

    **1.    Plaintiffs have not shown that a policy, custom, practice, or that final policymaking authority exists to hold Kitsap County liable under 42 U.S.C. §1983 for Mr. Crawley and Ms. Baker's alleged violations of Ms. Fox and Mr. Iskra's free speech rights.**

A municipality may not be held liable for the torts of its employees unless they were acting pursuant

---

[10] The legal basis of this claim is unclear. *See* fn. 8.

ORDER
Page - 8

to an official policy or longstanding custom or practice. *Botello v. Gammich*, 413 F.3d 971, 978-979 (9th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978), *Bd. of County Comm'rs. v. Brown*, 520 U.S. 397, 403 (1997), *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986), and *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003)). Liability also may attach "when the person causing the violation has final policymaking authority." *Webb v. Sloan*, 330 F.3d at 1164. "Final policymaking authority may be granted by a state legislature or by officials who possess that authority." *Botello*, 413 F.3d at 979.

Both plaintiffs admitted in their depositions that neither Mr. Crawley nor Ms. Baker were acting pursuant to an official policy, practice or custom when they allegedly violated plaintiffs' free speech rights. Plaintiffs do not even address this argument in their response to Kitsap County's motion. Therefore, Kitsap County's motion as to this claim is **GRANTED**. Plaintiffs' 42 U.S.C. §1983 claims against Kitsap County are **DISMISSED**.

    **2.**    **A jury could find that plaintiffs were constructively discharged.**

"A constructive discharge occurs when a person quits his job under circumstances in which a reasonable person would feel that the conditions of employment have become intolerable." *Draper v. Coeur Rochester*, 147 F.3d 1104, 1110 (9th Cir. 1998). In order to survive summary judgment on their constructive discharge claims, plaintiffs "must show that there are triable issues of fact as to whether a reasonable person in [their] position would have felt that [they] [were] forced to quit because of intolerable and discriminatory working conditions." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1465 (9th Cir. 1994) (internal quotation omitted). "Whether working conditions were so intolerable and discriminatory as to justify a reasonable employee's decision to resign is normally a question for the jury." *Sanchez v. City of Santa Ana*, 915 F.2d 424, 431 (9th Cir. 1990).

Based on the facts as set forth in this Order,[11] this Court cannot find that plaintiffs' decisions to resign were unreasonable as a matter of law. Kitsap County's motion for summary judgment as to this claim is **DENIED**.

---

[11] The Court's factual recitation is not intended to be exhaustive.

### 3. A reasonable jury could find that Kitsap County created a hostile working environment for Ms. Fox by allowing derogatory comments about her gender.

In order to prove her hostile working environment claim, Fox "must show that: 1) she was subjected to verbal or physical conduct of a sexual nature, 2) this conduct was unwelcome, and 3) the conduct was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (quoting *Ellison v. Brady*, 924 F.2d 872, 875-76 (9th Cir. 1991)). "The working environment must be both subjectively and objectively perceived as abusive." *Id.* (citing *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993)). "However, even if a hostile working environment exists, an employer is only liable for failing to remedy harassment of which it knows or should know." *Id.* (citing *Ellison,* 924 F.2d at 881).

Based on the facts as set forth in this Order, a reasonable jury could find that Kitsap County negligently allowed Mr. Barkow's comments and failed to take remedial action. A reasonable jury could find that the June 2, 2005 meeting conducted by Ms. Baker effectively denied Ms. Fox the ability to complain to the County. Based upon the information before it, the Court cannot say as a matter of law that Fox was or was not subject to conduct of a sexual nature or that her working conditions were altered due to her gender. Likewise, the Court cannot say whether or not affirmative defenses will be available to the County.

The scope and breadth of this claim will be determined after the Court has heard the evidence and will be ultimately defined in the instructions given to the jury. Therefore, Kitsap County's motion for summary judgment as to this claim will be **DENIED**.

### 4. Ms. Fox's failure to promote claim was not filed with the EEOC within 300 days of the date she was denied the Deputy Fire Marshal I position.

Ms. Fox had 300 days after the alleged unlawful activity to file a charge of discrimination with the EEOC. 42 U.S.C. §2000(e)-5(e). The "failure to file an EEOC charge within the prescribed 300-day period is not a jurisdictional bar, but it is treated as a violation of a statute of limitations, complete with whatever defenses are available to such a violation, such as equitable tolling and estoppel." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). Mr. Barkow was hired for the position Ms. Fox applied for and his first day of work was December 6, 2004. Ms. Fox knew on or before that date that she was not selected. Furthermore, it is not clear that Ms. Fox was qualified for the position of Deputy Fire Marshall,

[see Starkey Decl., para. 4] and that Mr. Barkow was not qualified or had lesser qualifications than Ms. Fox. [See Starkey Decl., para. 5; see also fn. 5].

As has been previously pointed out in this Order, plaintiff has failed to provide this Court with the charge of discrimination filed with the EEOC nor with the agency's right to sue letter. In plaintiff's response to the defendant's motion on this issue, she does not directly address the 300-day requirement but instead argues that the 90-day requirement for bringing suit after Notice of the Right to Sue should be tolled in this case.[12] She also indicates in her response that she filed her EEOC complaint after she resigned on December 6, 2005. The only copy of a potential charge of discrimination before the Court was provided by Kitsap County and it is dated November 23, 2005. [Starkey Decl., Exh. H]. Even if Ms. Fox had filed her claim on November 23, 2005, it would not have been timely. November 23, 2005 is more than 350 days from the date when the unlawful conduct occurred. It is therefore beyond the 300-day requirement. Kitsap County's motion for summary judgment on this claim is **GRANTED**.

**5.     Ms. Fox's disperate treatment claims will not be dismissed on summary judgment.**

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), the Supreme Court articulated a framework for assessing the burdens and order of presentation of proof in a case alleging disparate treatment. The plaintiff must initially establish a prima facie case. *Id*., at 802. Plaintiff "must show that (1) she belongs to a protected class; (2) she was qualified for the position; (3) she was subjected to an adverse employment action; and (4) similarly situated men were treated more favorably, or her position was filled by a man." *Villiarimo v. Aloha Island Air*, 281 F.3d 1054, 1062 (9th Cir. 2002). The Ninth Circuit has consistently held that "[t]he burden of establishing a prima facie case of disparate treatment is not onerous," and "[a]t the summary judgment stage 'the requisite degree of proof does not even need to rise to the level of a preponderance of the evidence.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994) (internal citations omitted).

Unfortunately, plaintiff's briefing leaves unclear at this stage of the proceedings whether Ms. Fox has viable claims of disparate treatment due to the denial of reclassification and training, or in the way in which the annual leave call in procedure was enforced as to her. However, granting summary judgment

---

[12]This section of the brief was obviously cut and pasted from another brief and not proofread. The heading refers to a "Ms. Sutherland" who is not a party before this Court.

now will not alter the length of the trial or change the way plaintiff presents her evidence in any meaningful way. As with plaintiff's hostile work environment claim, the existence or non-existence of these claims will be determined by how the Court ultimately instructs the jury. Kitsap County's motion for summary judgment on these claims is **DENIED**.

### 6. The Court will not dismiss plaintiff's claim for intentional infliction of emotional distress at this time.

In order to prevail on a claim of intentional infliction of emotional distress, or outrage, a plaintiff must prove that defendants engaged in (1) extreme and outrageous conduct; (2) intentional or reckless infliction of emotional distress; and (3) that plaintiff suffered severe emotional distress. *Kloepfel v. Bokor*, 149 Wn.2d 192, 195-96 (2003).[13] After the evidence has been presented at trial, the Court will determine whether to instruct the jury on this claim. Kitsap County's motion for summary judgment on this claim is **DENIED.**

## C. Individual Defendants' Motion for Summary Judgment on Plaintiff Teresa Fox's Claims.

Defendants Keith Barkow, Derrick Crawley, Cynthia Baker, and Scott Riddell move for summary judgment on Ms. Fox's claims on several grounds. They will be discussed in turn.

### 1. The defendants are not individually liable under Title VII.

Plaintiffs have sued the named defendants in their "individual and official capacity" on all claims. It is well-established that the statutory scheme of Title VII does not impose personal liability for employees. *See e.g. Greenlaw v. Garrett*, 59 F.3d 994, 1001 (9th Cir. 1995) (citing *Miller v. Maxwell's Intern. Inc.*, 991 F.2d 583, 587-88 (9th Cir. 1993)). Defendants' motion for summary judgment as to Fox's Title VII claims is **GRANTED**.

To the extent the defendants argue that their individual and collective actions did not violate Title VII, those issues have been previously discussed and ruled on in this Order in the context of Kitsap County's motion for summary judgment.

---

[13] The complaint at para. 5.5 only raises a claim that the defendants inflicted intentional emotional distress upon Ms. Fox. However, in the prayer for relief section of the complaint at para. 5, p. 8, damages are sought for the intentional infliction of emotional distress as to both plaintiffs. Plaintiffs' response to Kitsap County's motion only discusses Ms. Fox's claim, however.

The Court expects counsel for the plaintiffs to clear up this obvious discrepancy prior to trial at the pretrial conference.

**2. Defendants Crawley and Baker are not entitled to qualified immunity on Ms. Fox's First Amendment retaliation claim.**

Defendants Mr. Crawley and Ms. Baker move for summary judgment on Ms. Fox's First Amendment retaliation claim asserting that they are protected by qualified immunity. Pursuant to the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818,(1982). In analyzing a qualified immunity defense, the Court must determine first, whether a constitutional right would have been violated on the facts alleged, taken in the light most favorable to the party asserting the injury; and then, whether the right was clearly established when viewed in the specific context of the case. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. The privilege of qualified immunity is an immunity from suit rather than a mere defense to liability, and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. *Id.*

The Supreme Court has recently held "that the *Saucier* protocol should not be mandatory in all cases . . . [but] it is often beneficial." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). In this case it is beneficial to first determine whether a constitutional right was violated before moving to the second question of whether the right was clearly established.

**a. The required elements of Ms. Fox's First Amendment retaliation claim.**

In order to sustain a First Amendment retaliation claim, a public employee must show (1) the employee engaged in constitutionally protected speech, (2) the employer took adverse employment action against the employee, and (3) the employee's speech was a substantial or motivating factor in the adverse action. *Posey v. Lake Pend Oreille School Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (quoting *Freitag v. Ayers*, 468 F.3d 528, 543 (9th Cir. 2006).

**b. Ms. Fox's speech was constitutionally protected.**

To address the first step in the qualified immunity analysis, the Court must determine whether the first element of plaintiff's First Amendment retaliation claim has been met. Under *Posey*, this analysis now requires a three-step inquiry. *Posey*, 546 F.3d at 1130. First, the district court must determine "whether

the expressions in question were made by the speaker '. . . upon matters of public concern.'" *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006) (quoting *Connick v. Myers*, 461 U.S. 138, 146-47 (1983)). Second, the Court must apply the *Pickering* balancing test[14] and consider "whether the state lacked adequate justification for treating the employee differently from any other member of the general public[.]" *Id*., at 1130-31 (internal quotation marks omitted) (citing *Pickering v. Board of Education*, 391, U.S. 563, 568 (1968)). If the Court answers both questions yes, "only then should the Court consider whether the plaintiff spoke as a private citizen or a public employee." *Id*., at 1131. This final question of the three part inquiry is a mixed question of fact and law. *Id*., at 1129.

### (i) Ms. Fox's complaints about fraud, waste, and abuse in the KCFMO raised matters of public concern.

The Ninth Circuit has stated "that misuse of public funds, wastefulness, and inefficiency in managing and operating government entities are matters of inherent public concern." *Johnson v. Multnomah County*, 48 F.3d 420, 425 (9th Cir. 2995) (citing *Roth v. Veteran's Admin.*, 856 F.2d 1401, 1405 (9th Cir. 1988). Ms. Fox complained to her supervisors about the misuse of county vehicles, employees showing up late and leaving early, abuse of overtime, failure to perform inspections, incompetent inspections, and mismanagement of the KCFMO. Although Ms. Fox was personally dissatisfied with her job and her treatment at the KCFMO, the complaints about fraud, waste and abuse at the agency fit well within the type of communications found by courts to be of public concern. *Id*.; *see also Connick*, 461 U.S., at 148.

### (ii) Ms. Fox's interest outweighs the County's interest under the *Pickering* balancing test.

This Court must next balance Ms. Fox's interests in "commenting upon matters of public concern" with the "interest of the State, . . . in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S., at 568. The Court must ultimately decide "whether the state lacked 'adequate justification for treating the employee differently from any other member of the general public[.]'" *Posey*, 546 F.3d at 1131 (quoting *Garcetti*, 547 U.S., at 418).

---

[14]The *Pickering* balancing test requires a court to evaluate and balance "the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interests of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering v. Board of Education*, 391 U.S. 563, 568 (1968).

The defendants do not address this question in their motion, and the plaintiff, of course, does not address the issue either. Pointing out alleged fraud, waste, and abuse is speech on important matters of public concern. Although the defendants have an interest in an efficiently run Fire Marshall's Office, in this case Ms. Fox's interests in commenting on fraud, waste, and abuse outweighs the defendants' interest in promoting an efficient office operation. From reading the record in this case the Court can surmise that the KCFMO was not an enjoyable place to work during 2004-2005. Although a majority of Ms. Fox's comments were directed at the alleged dysfunction in the office, and much of the alleged dysfunction may be attributable to Ms. Fox's and Mr. Iskra's complaints, the Court cannot say that these comments were the overriding cause of the dysfunction in the office. The defendants should also be concerned about alleged fraud, waste, and abuse in the KCFMO and should not ignore those complaints or retaliate against the speaker. Therefore, the defendants have not shown an "adequate justification for treating [Ms. Fox] differently from any member of the general public." *Id*.

Because the Court has answered the first two questions affirmatively, the Court will address the final question.

### (iii) There exists a disputed issue of material fact as to whether Ms. Fox's job duties involved reporting fraud, waste, and abuse to the County.

The final inquiry into whether Ms. Fox's speech was protected asks "whether the plaintiff spoke as a private citizen or a public employee." *Id*. Under *Posey*, this issue involves a mixed question of fact and law. *Id*., at 1129. Neither party has briefed this issue, but it appears to the Court that issues of material fact exist with regard to her job duties as a County employee and whether or not it was her responsibility to report fraud, waste, abuse, and mismanagement in the KCFMO. *See e.g., Posey*, 546 F.3d at 1125 ("Posey counters that no aspect of his job description required him to 'report wrongdoing by administrators or co-workers . . ..'").

### (iv) A reasonable jury could find that Ms. Fox suffered an adverse employment action and that her speech was a substantial or motivating factor.

As has been previously pointed out in this Order, a reasonable jury could determine that Ms. Fox was denied training and reclassification, and that the annual leave call in policy was enforced against her in a discriminatory way. They could also find that she was constructively discharged. The jury could find that a causal link existed based on the June 2, 2005 meeting with Ms. Baker.

On the facts as alleged and taken in the light most favorable to her, Ms. Fox has established a violation of a constitutional right.

### c. The right to speak out about fraud, waste, and abuse was clearly established.

In order to determine whether the right was clearly established the Court is to "survey the legal landscape" at the time of the alleged misconduct. *Trevino v. Gates*, 99 F.3d 911, 916 (9th Cir. 1996). It was well-established at the time of the conduct in question that legal protection was recognized for public employees who speak out on matters of public concern. *Roth*, 856 F.2d 1401. Whether or not this speech was made primarily pursuant to plaintiff's employment or whether it was intended to bring a matter of concern to the public is an issue yet to be resolved. Plaintiff has presented facts, when viewed in the light most favorable to her, that support her position that the actions taken against her constituted a violation of her First Amendment rights, and that the law regarding speaking out on matters of public concern was established at the time of the conduct in question. While the Court is aware of, and agrees with, the purpose for qualified immunity protection, for the reasons discussed above, the defendants' motion for summary judgment on qualified immunity as to Ms. Fox is **DENIED**.

### 3. Barkow and Riddell are not state actors for the purposes of 42 U.S.C. §1983.

To establish a prima facie case under 42 U.S.C. §1983, a plaintiff must demonstrate that (1) the action complained of occurred "under color of law," and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). A person acts under color of state law if he "exercise[s] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Plaintiff does not respond to this argument and a review of the argument demonstrates that it has merit. There is nothing to show that Barkow and Riddell, plaintiffs' co-workers, had the authority required to act under state law. Defendants' motion for summary judgment on this claim is **GRANTED**.

Furthermore, plaintiff Fox will be expected to provide at or before the pretrial conference in this case a state law basis for her claims that Mr. Riddell harassed and retaliated against her for whistle-blowing activity and/or for bringing the instant lawsuit.

### D. Individual Defendants' Motion for Summary Judgment of Plaintiff Edward Iskra's Claims.

Defendants Keith Barkow, Derrick Crawley, Cynthia Baker, and Scott Riddell move for summary judgment on Mr. Iskra's claim on several grounds. They will be addressed in turn.

#### 1. The individual defendants are not liable under Title VII.

To the extent that Mr. Iskra has stated a claim under Title VII,[15] and for the reasons set forth in this Order as to Ms. Fox's Title VII claims,[16] defendants' motion for summary judgment as to Mr. Iskra's Title VII claims is **GRANTED**.

#### 2. Defendants Crawley and Baker are not entitled to qualified immunity on Mr. Iskra's First Amendment retaliation claim.

The Court has analyzed the applicability of qualified immunity to the facts of this case and will not repeat it here.[17] Mr. Iskra alleges that he spoke out about the same fraud, abuse, and waste as did Ms. Fox while employed in the KCFMO. Although Mr. Iskra testified in his deposition that it was part of his duty "as an ethical employee" to report illegal behavior, his belief does not control whether or not he was speaking as a private citizen or public employee. [Iskra Dep., pp. 72-72]. Defendants Crawley and Baker's motion for summary judgment on qualified immunity as to Mr. Iskra's claims is **DENIED.**

#### 3. Barkow and Riddell are not state actors for the purposes of 42 U.S.C. §1983.

For the reasons set forth in this Order as to Ms. Fox's 42 U.S.C. §1983 claims against Mr. Barkow and Mr. Riddell,[18] defendants Barkow and Riddell's motion for summary judgment on Iskra's 42 U.S.C. §1983 claims is **GRANTED**.

## IV. CONCLUSION

The Court is acutely aware that this motion has been pending over thirty days; however, these motions would have been ruled on much earlier had plaintiffs' counsel spent the necessary time researching and briefing the issues and pointing to specific pages in an excerpted record supporting plaintiffs' arguments. Providing complete depositions with few direct citations to page numbers and dumping on the

---

[15] *See* Section II., *supra*.

[16] *See* Section III.C.1., *supra*.

[17] *See* Section III.C.2., *supra.*

[18] *See* Section III.C.3., *supra*

Court the 189-page Diamond Report with the citation "See Diamond Report" is not helpful and will not be tolerated in the future.

At the pretrial conference, plaintiffs' counsel will be expected to clarify what claims are being pursued at trial and to provide answers to the questions raised by defendants' motions and left unanswered in plaintiffs' briefing as set forth in this Order.

## V. ORDER

1. Kitsap County's Motion for Summary Judgment [Dkt. #97] is **GRANTED** as to plaintiffs' 42 U.S.C. §1983 claim and Title VII failure to promote claim. The motion is **DENIED** in all other respects.

2. Individual Defendants Motion for Summary Judgment on Plaintiff Fox's Claims [Dkt. #87] is **GRANTED** as to Plaintiff's Title VII claims and 42 U.S.C. §1983 claims as to Barkow and Riddell. The motion is **DENIED** in all other respects.

3. Individual Defendants Motion for Summary Judgment on Plaintiff Iskra's Claims [Dkt. #94] is **GRANTED** as to Plaintiff's Title VII claims and 42 U.S.C. §1983 claims as to Barkow and Riddell. The motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

Dated this 20th day of February, 2009.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE